UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-16506-EEB |
| RICHARD VINCENT KEITH | ) | |
| SSN: XX-XXX- 0436 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## MOTION TO APPROVE SALE OF RESIDENCE FREE
## AND CLEAR OF LIENS CLAIMS AND ENCUMBRANCES

The Debtor, by and through his attorneys, Kutner Miller Brinen, P.C., respectfully moves this Court pursuant to 11 U.S.C. Section 363 and Bankruptcy Rules 6004, 9014 and 4001 for entry of an Order authorizing the Debtor to sell certain real property free and clear of liens, claims and encumbrance and to distribute the proceeds of the sale. As grounds therefore the Debtor respectfully states as follows:

### BACKGROUND

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on April 3, 2012 ("Petition Date").  The Debtor remains a Debtor-in-Possession.

2.      The Debtor is an individual who resides at the property located at 3213 Shore Road, Fort Collins, CO 80524 (the "Property").

3.      The Debtor has an opportunity to immediately sell the Property to R.Danette Stewart Revocable Living Trust ("Buyer").

4.      The Property is subject to three secured claims.  A review of the security interest currently encumbering the Property is generally set forth as follows:

      a.   A first priority Deed of Trust to secure a loan held by First National Bank of Omaha, N.A. ("FNB").  The outstanding balance on this loan as of the Petition Date, pursuant to the Proof of Claim filed by FNB, is approximately $1,107,167.42.

      b.   A second priority Deed of Trust to secure a loan held by FNB.  The outstanding balance on this loan as of the Petition Date, pursuant to the Proof of Claim filed by FNB, is approximately $448,146.01.

      c.   A third priority Deed of Trust to secure a loan held by First Western Trust Bank ("First Western").   The outstanding balance on this loan as of the Petition Date, pursuant to the Proof of Claim filed by First Western, is approximately $1,373,963.29.

5.    The Property has been the subject of actions taken before this Court, providing parties in interest with the knowledge that the FNB debts associated with the Property would be refinanced, the Property would be sold, or the Property would be foreclosed upon.

6.    Specifically, on September 25, 2012, the Debtor and FNB filed a Joint Motion to Approve a Settlement Agreement between the Debtor and FNB. The terms of the Settlement Agreement pertinent to this Motion, and without restating all the terms of the Settlement Agreement, called for the Debtor to obtain refinancing and pay FNB $950,000 by certain deadlines which were not satisfied. Failure to satisfy the deadlines entitled FNB to seek relief from stay from this Court to commence foreclosure proceedings upon the Property.  The Settlement Agreement also call for the parties to obtain the release of First Western's Deed of Trust either through court action or the consent of First Western, which consent was obtained (subject to certain terms and conditions), a copy which is attached hereto as Exhibit A.

7.    No party in interest objected to the Joint Motion of the Debtor and FNB and on November 5, 2012 the Court entered an Order granting the relief requested in the Motion and approving the Stipulation.

8.    The Debtor was unable to obtain the refinancing and on November 20, 2012 FNB filed a Motion for Relief from Stay with respect to the Property.  No party in interest objected to the relief sought in the Motion and on December 13, 2012, the Court granted FNB relief from the stay to proceed against the Property.

9.    The Property foreclosure sale was originally scheduled for December 19, 2012. FNB, at the request of the Debtor, continued the foreclosure sale to January 9, 2013.  FNB again continued the foreclosure sale in exchange for payment of $100,000 to be applied against the $950,000.  The $100,000 was paid $50,000 by Danette Stewart, beneficiary of the trust who is the Buyer, and a friend of the Debtor.  The additional $50,000 was paid by Carla Jones, the Debtor's girlfriend. The foreclosure sale is currently scheduled for February 6, 2013.

10.     The Debtor lists the value of the Property on his Schedule A at $1,100,000. Regardless of the actual value of the Property, the above facts and events in this bankruptcy case indicate that the Property does not have a value that exceeds the amount due to FNB under the loans and Deeds of Trusts associated with the Property.  If there were any equity in the Property for the benefit of creditors, parties in interest would have objected to FNB's motion for relief from stay.

11.     Currently, there are only two alternatives with respect to the Property, the Property is either sold or foreclosed upon.  Under either scenario, there is no equity in the Property for the benefit of creditors other than FNB.

12.     The Debtor entered into a proposed Contract to Buy and Sell Real Estate ("Sale Contract"), subject to Court approval (*See* Sale Contract ¶ 30).  A copy of the Sale Contract is attached hereto and incorporated herein as Exhibit B.

13.     The Sale Contract provides for the sale of the Property for a purchase price of the lesser of $950,000.  (*See* Sale Contract ¶ 4).  A closing can occur once the Sale Contract and this Motion are approved by the Court.   The Principal terms of the Sale Contract are:

   a.     The Sale Contract is the standard form Colorado sale contract for a residential property.

   b.     The Buyer shall pay the total purchase price as detailed above upon closing.

   c.     There are no contingencies to the sale. (*See* Sale Contract ¶ 3).

   d.     Closing must occur by February 4, 2013.  (*See* Sale Contract ¶ 3).

   e.     The Debtor shall pay the closing costs detailed in the Sale Contract. (*See* Sale Contract ¶¶ 7.1, Evidence of Title; and 15, closing costs, closing fee, association fees, and taxes).

14.     FNB has agreed to accept $950,000 in exchange for the release of its Deeds of Trusts, inclusive of the $100,000 already paid to FNB.

15.     The Buyer has stated it will enter into an agreement with the Debtor and/or Ms. Jones to lease the Property to either one or both of them.

**RELIEF REQUESTED**

16.     The Debtor is seeking Court authorization to sell the Property pursuant to Bankruptcy Code § 363 free and clear of all liens, claims and encumbrances.  All liens, claims and encumbrances

will attach to the proceeds of the sale in the order of their priorities.  The Debtor is also seeking authorization to distribute the sale proceeds at the closing.

17.     Section 363(b) of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor-in-possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   Further, section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

18.     The Bankruptcy Court's power to authorize a sale under section 363(b) is to be exercised at the Court's discretion.  In re WPRV-TV, Inc., 983 F.2d 336, 340 (1st Cir. 1993); New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983).

19.     Courts have authorized a sale of a debtor's assets pursuant to section 363(b) of the Bankruptcy Code or in the absence of a reorganization plan where there is a "sound business purpose." In re Delaware & Hudson Ry. Co., 124 B.R. 169 (D. Del. 1991); Titusville Country Club v. Penn Bank (In re Titusville Country Club), 128 B.R. 396 (Bankr. W.D.Pa. 1991); In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15 (Bankr. E.D.Pa. 1987).  See also, Stephens Indus., Inc. v. McClune, 789 F.2d 386 (6th Cir. 1986); In re Lionel Corp., 722 F.2d at 1071 (setting forth the "sound business purpose" test in the context of a sale of assets under section 363(b) of the Bankruptcy Code).

20.     It is in the best interests of the Debtor, his estate and his creditors to sell the Property as soon as possible.  The sale limits and immediately determines the amount of FNB's unsecured claim by satisfying the secured portion of FNB's claims. If there is a foreclosure upon the Property it is uncertain what amount FNB will receive on account of its secure debt.  Further, if there is a foreclosure, the Debtor will have to vacate the Property, incurring the costs and expenses associated with relocating, including moving expenses.  By contrast, if the sale is approved and the foreclosure avoided the Debtor will have an opportunity to lease the Property from the Buyer, avoiding the issues related with moving.  Further the Debtor's girlfriend has stated she will move into the Property and pay fifty-percent of the living expenses.  In sum, the sale provides a mechanism for diminishing the

Debtor's costs and expenses and fixes the claim of FNB, thereby providing a mechanism for preparing a Plan that maximizes the return to creditors.

21.     Courts have also required that the sale price be fair and reasonable and that the sale be the result of good-faith negotiations with the buyer.  In re Abbotts Dairies of Pa., 788 F.2d 143, 147-50 (3rd Cir. 1986); In re Tempo Technology Corp., 202 B.R. 363, 367 (D. Del. 1996), aff'd sub nom. Diamond Abrasives Corp. v. Temtechco, Inc. (In re Temtechco, Inc.), 141 F.3d 1155 (3d Cir. 1998); In re Industrial Valley, 77 B.R. at 22; In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1983); See also In re Ewell, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to section 363 of the Bankruptcy Code because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code).

22.     While the Bankruptcy Code does not define "good faith," courts have held that for purposes of section 363(m), a "good faith purchaser" is one who buys "in good faith" and "for value" and that lack of good faith is shown by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders.  In re Abbots Diaries of PA., 788 F.2d at 147; In re Tempo Technology Corp., 202 B.R. at 367.  The sale proposed in this Motion was negotiated at arms length and provides an immediate benefit to the Debtor, the estate, and his creditors.

23.     The Debtor requests authorization to sell the Property free and clear of liens, claims and encumbrances and other interests.  Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

    (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (2) such entity consents;

    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4) such interest is in bona fide dispute; or

    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24.     Counsel has been informed that all secured creditor's consent to the sale free and clear

of all liens, claims and encumbrances.  To the extent any secured creditor does not consent, all lienholders could be compelled to accept a money satisfaction of their interests, thereby satisfying § 363(f)(5) of the Bankruptcy Code.  See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D.Mo. 1997); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 463-64 (E.D. Mich. 1995); WPRY-TV, Inc., 143 B.R. at 321.  Courts considering this issue have held that the "cramdown" provision under the Bankruptcy Code constitutes such a "legal or equitable proceeding" and permits a sale free and clear pursuant to section 363(f)(5).  See, e.g., Grand Slam U.S.A., Inc., 178 B.R. at 464; Scherer v. Federal National Mortgage Association (In re Terrace Chalet Apartments), 159 B.R. 821, 829 (N.D. Ill. 1993); In re Healthco Int'l, Inc., 174 B.R. 174, 176-77 (Bankr. D.Mass. 1994).

25.     The proceeds of the sale will be used to pay all closing costs, including paying the secured claims encumbering the Property.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, a proposed form is filed herewith, authorizing the sale of the Property free and clear of all liens, claims and encumbrances, authorizing the distribution of sale proceeds and granting such further and additional relief as to the Court may appear proper.

DATED: January 21, 2013                           Respectfully submitted,

                                                  By:_____
                                                      Aaron A. Garber (#36099)
                                                      Kutner Miller Brinen, P.C.
                                                      303 E. 17th Avenue, Suite 500
                                                      Denver, CO  80203
                                                      Telephone:  (303) 832-2400
                                                      Telecopy: (303) 832-1510
                                                      E-Mail: aag@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 21, 2013, I served by prepaid first class mail a copy of the foregoing **MOTION TO APPROVE SALE OF RESIDENCE FREE AND CLEAR OF LIENS CLAIMS AND ENCUMBRANCES AND NOTICE OF MOTION TO APPROVE SALE OF RESIDENCE FREE AND CLEAR OF LIENS CLAIMS AND ENCUMBRANCES** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Paul V. Moss, Esq.
United States Trustee's Office
999 18th Street
Suite 1551
Denver, CO 80202

Zane A. Gilmer, Esq.
Perkins Coie, LLP
1900 Sixteenth Street
Suite 1400
Denver, CO 80202-5255

Daniel A. Zazove, Esq.
David J. Gold, Esq.
Perkins Coie, LLP
131 South Dearborn Street
Suite 1700
Chicago, IL 60603-5559

Mark J. Kolber, Esq.
Daniel C. Wennogle, Esq.
Jones & Keller, P.C.
5613 DTC Parkway
Suite 970
Greenwood Village, CO 80111

Susan J. Hendrick, Esq.
Catherine A. Hildreth, Esq.
Aronowitz & Mecklenburg, LLP
1199 Bannock Street
Denver, CO 80204

Douglas D. Koktavy, Esq.
3515 South Tamarac Drive
Suite 200
Denver, CO 80237

David S. Oppenheim, Esq.
1900 West Littleton Blvd.
Littleton, CO 80120

Cristel D. Shepherd, Esq.
Polsinelli Shughart, P.C.
1515 Wynkoop Street
Suite 600
Denver, CO 80202

Deanna Westfall, Esq.
Cristel D. Shepherd, Esq.
Castle Stawiarski, LLC
999 18th Street
Suite 2301
Denver, CO 80202

James T. Burghardt, Esq.
16 Market Square
1400 16th Street
Suite 600
Denver, CO 80202

First National Bank
205 West Oak Street
Fort Collins, CO 80524

Bank of Colorado
1041 Main Street
P.O. Box 939
Windsor, CO 80550

Morris James, LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306

Chase Bank
JP Morgan Chase
270 Park Avenue
New York City, New York

First Western Trust Bank
3003 East Harmony
Fort Collins, CO 80525

Lake Oconee Community Bank
Decatur First Bank
1010 Park Place Blvd.
Greensboro, GA 30642

Tracy Cunningham
420 Margo Avenue
Long Beach, CA 90803

GE Capital Mortgage Services
3 Executive Campus
Cherry Hill, NJ 08002

Holme Roberts & Owen
1700 Lincoln Street
Denver, CO 80203

United Visa/Barclay's
P.O. Box 8650
Wilmington, DE 19899

American Express
P.O. Box 650448
Dallas, TX 75265

Ringenberg & Beller
215 West Oak Street
Fort Collins, CO 80521

Allen & Vellone
1600 Stout Street
Denver, CO 80202

Frontier Mastercard
P.O. Box 13337
Philadelphia, PA 19101-3337

Ptarmigan Country Club
5416 Vardon Way
Fort Collins, CO 80524

Wollam Landscape, Inc.
P.O. Box 1452
Fort Collins, CO 80522

**Vicky Martina**

## CONSENT AGREEMENT

This Consent Agreement is made by and between First National Bank of Omaha, N.A. ("FNB") and First Western Trust Bank ("FWTB").

    1      FWTB agrees that upon the closing of the refinance of the loans secured by that certain residence of Richard Vincent Keith ("Debtor") located at 3213 Shore Road, Fort Collins, CO 80524 ("Residence") in accordance with that certain Settlement Agreement dated as of September 7, 2012 between Debtor and FNB, FWTB will release its lien secured by the Residence and become an unsecured creditor in the Bankruptcy Case described below, entitled to all rights and remedies of an unsecured creditor in such Bankruptcy Case.

    2.     Such release will be escrowed with the title company performing the closing of the same, with instructions that it is to be recorded upon the closing of the refinance of the Residence.

    3.     This consent is subject to the following conditions:

        (a)    Bankruptcy Court Approval. FTWB's consent is subject to the approval of the Settlement Agreement by the Bankruptcy Court in the Chapter 11 Bankruptcy Case pending in the Bankruptcy Court for the District of Colorado Case Number 12-16506 ("Bankruptcy Case").

        (b)    Time is of the essence. All deadlines and dates for action set forth in the Settlement Agreement, whether by Debtor or by FNB are of the essence. This consent shall terminate in the event any such date or deadline is not met or is extended without First Western Trust Bank's prior written consent.

        (c)    Appraisal. First Western shall have the sole option and election to terminate this consent by written notice to FNB on or before 5 PM, Mountain Time, November 8, 2012 if the value of the residence is more than $1,200,000 as determined by an appraisal made by an appraiser certified by the State of Colorado. Such appraiser may be engaged by First Western Trust Bank, except that First Western Trust Bank may choose to rely on an appraisal provided by FNB. FNB agrees to provide FWTB its most recent appraisal of the Residence contemporaneous with the execution of this agreement and to provide FETB any appraisals it receives on or before November 7, 2012 within 24 hours of its receipt.

FIRST WESTERN TRUST BANK

By: _____
      Signature
      MATTHEW Roan
      Printed Name
      S V P
      Title

Date: _____

FIRST NATIONAL BANK OF OMAHA, N.A.

By: _____
      Signature
      Joseph Ballestrasse
      Printed Name
      Vice President
      Title

Date: 10/18/12

56963-0059/LEGAL24586819.1

## EXHIBIT A

| | |
|---|---|
| 1 | ⓢ    The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. |
| 2 | (CBS1-9-12) (Mandatory 1-13) |

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

# CONTRACT TO BUY AND SELL REAL ESTATE
# (RESIDENTIAL)

Date: <u>as of January 18, 2013</u>

| AGREEMENT |
|---|

**1.    AGREEMENT.** Buyer, identified in § 2.1, agrees to buy, and Seller, identified in § 2.3, agrees to sell, the Property described below on the terms and conditions set forth in this contract (Contract).

**2.    PARTIES AND PROPERTY.**

**2.1.    Buyer.** Buyer, <u>R.Danette Stewart Revocable Living Trust</u>, will take title to the Property described below as ☐ ~~Joint Tenants~~ ☐ ~~Tenants In Common~~ ☐ ~~Other~~                                                    <u>n/a</u>

**2.2.    Assignability and Inurement.** This Contract ☐ **Shall** ☒ **Shall Not** be assignable by Buyer without Seller's prior written consent. Except as so restricted, this Contract shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties.

**2.3.    Seller.** Seller, <u>Richard Keith</u>, is the current owner of the Property described below.

**2.4.    Property.** The Property is the following legally described real estate in the County of <u>Larimer</u>, Colorado:

Lot 87 Terry Shores, Second Filing, County of Larimer, State of Colorado

| known as No. <u>3213 Shore Road</u> | <u>Fort Collins,</u> | <u>Colorado</u> | <u>80524</u>  , |
|---|---|---|---|
| Street Address | City | State | Zip |

together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).

**2.5.    Inclusions.** The Purchase Price includes the following items (Inclusions):

**2.5.1.    Fixtures.** If attached to the Property on the date of this Contract, the following items are included unless excluded under **Exclusions** (§ 2.6): lighting, heating, plumbing, ventilating and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including ___ remote controls.

**Other Fixtures:**  <u>n/a</u>

If any fixtures are attached to the Property after the date of this Contract, such additional fixtures are also included in the Purchase Price.

**2.5.2.    Personal Property.** If on the Property, whether attached or not, on the date of this Contract, the following items are included unless excluded under **Exclusions** (§ 2.6): storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following are included: ☐ **Water Softeners** ☐ **Smoke/Fire Detectors** ☐ **Carbon Monoxide Alarms** ☐ **Security Systems** ☐ **Satellite Systems** (including satellite dishes).

**Other Personal Property:** <u>n/a</u>

The Personal Property to be conveyed at Closing shall be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except <u>n/a</u>                                     . Conveyance shall be by bill of sale or other applicable legal instrument.

~~**2.5.3.    Parking and Storage Facilities.** ☐ **Use Only** ☐ **Ownership** of the following parking facilities:~~
~~                              ; and ☐ **Use Only** ☐ **Ownership** of the following storage facilities:                                   .~~
~~**2.5.4.    Water Rights, Water and Sewer Taps.**~~
~~**2.5.4.1.    Deeded Water Rights.** The following legally described water rights:~~
~~                              Any water rights shall be conveyed by ☐                                **Deed** ☐ **Other** applicable legal instrument.~~

54   ☐──────────2.5.4.2. Well Rights. If any water well is to be transferred to Buyer, Seller agrees to supply required
55   information about such well to Buyer. Buyer understands that if the well to be transferred is a Small Capacity Well or a Domestic
56   Exempt Water Well used for ordinary household purposes, Buyer shall, prior to or at Closing, complete a Change in Ownership
57   form for the well. If an existing well has not been registered with the Colorado Division of Water Resources in the Department of
58   Natural Resources (Division), Buyer shall complete a registration of existing well form for the well and pay the cost of
59   registration. If no person will be providing a closing service in connection with the transaction, Buyer shall file the form with the
60   Division within sixty days after Closing. The Well Permit # is _____.
61   ──────────2.5.4.3. ☐ Water Stock Certificates:
62   ──────────2.5.4.4. ☐ Water Tap       ☐ Sewer Tap

63   Note: Buyer is advised to obtain, from the provider, written confirmation of the amount remaining to be paid, if any, time
64   and other restrictions for transfer and use of the tap.
65                         2.5.4.5. Other Rights:
66
67   2.6.   Exclusions.  The following items are excluded (Exclusions): <u>none</u>
68

69   3.   DATES AND DEADLINES.

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | n/a |
| | | **Title and Association** | |
| 2 | § 7.1 | Record Title Deadline | n/a |
| 3 | § 7.5 | Exceptions Request Deadline | n/a |
| 4 | § 8.1 | Record Title Objection Deadline | n/a |
| 5 | § 8.2 | Off-Record Title Deadline | n/a |
| 6 | § 8.2 | Off-Record Title Objection Deadline | n/a |
| 7 | § 8.3 | Title Resolution Deadline | n/a |
| 8 | § 7.6 | Association Documents Deadline | n/a |
| 9 | § 7.6 | Association Documents Objection Deadline | n/a |
| 10 | § 8.5 | Right of First Refusal Deadline | n/a |
| | | **Seller's Property Disclosure** | |
| 11 | § 10.1 | Seller's Property Disclosure Deadline | n/a |
| | | **Loan and Credit** | |
| 12 | § 5.1 | Loan Application Deadline | n/a |
| 13 | § 5.2 | Loan Objection Deadline | n/a |
| 14 | § 5.3 | Buyer's Credit Information Deadline | n/a |
| 15 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | n/a |
| 16 | § 5.4 | Existing Loan Documents Deadline | n/a |
| 17 | § 5.4 | Existing Loan Documents Objection Deadline | n/a |
| 18 | § 5.4 | Loan Transfer Approval Deadline | n/a |
| | | **Appraisal** | |
| 19 | § 6.2 | Appraisal Deadline | n/a |
| 20 | § 6.2 | Appraisal Objection Deadline | n/a |
| | | **Survey** | |
| 21 | § 9.1 | Current Survey Deadline | n/a |
| 22 | § 9.2 | Current Survey Objection Deadline | n/a |
| | | **Inspection and Due Diligence** | |
| 23 | § 10.2 | Inspection Objection Deadline | n/a |
| 24 | § 10.3 | Inspection Resolution Deadline | n/a |
| 25 | § 10.5 | Property Insurance Objection Deadline | n/a |
| 26 | § 10.6 | Due Diligence Documents Delivery Deadline | n/a |
| 27 | § 10.7 | Due Diligence Documents Objection Deadline | n/a |
| 28 | § 10.8 | Conditional Sale Deadline | n/a |
| | | **Closing and Possession** | |
| 29 | § 12.3 | **Closing Date** | February 4, 2013 |
| 30 | § 17 | Possession Date | On the Closing Date |
| 31 | § 17 | Possession Time | 10 a.m. |

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 32 | § 28 | **Acceptance Deadline Date** | January 18, 2013 |
| 33 | § 28 | **Acceptance Deadline Time** | 10 a.m. |

70  **Note: Applicability of Terms.**
71  Any box, blank or line in this Contract left blank or completed with the abbreviation "N/A", or the word "Deleted" means such
72  provision in **Dates and Deadlines** (§ 3), including any deadline, is not applicable and the corresponding provision of this Contract
73  to which reference is made is deleted.

74  The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.

75  **Note:** If **FHA** or **VA** loan boxes are checked in § 4.5.3 (Loan Limitations), the **Appraisal Deadline** (§ 3) does **Not** apply to **FHA**
76  insured or **VA** guaranteed loans.

77  **4.    PURCHASE PRICE AND TERMS.**
78      **4.1.    Price and Terms.** The Purchase Price set forth below shall be payable in U.S. Dollars by Buyer as follows:

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | Purchase Price | $         950,000.00 | |
| 2 | § 4.2 | Earnest Money | | $                      0.00 |
| 3 | § 4.5 | New Loan | $712,500. | $         950,000.00 |
| 4 | § 4.6 | Assumption Balance | | $                      0.00 |
| 5 | § 4.7 | Seller or Private Financing | | $                      0.00 |
| 6 | | | | |
| 7 | | | | |
| 8 | § 4.3 | Cash at Closing | | $              237,500 |
| 9 | | **TOTAL** | $         950,000.00 | $         950,000.00 |

79  ~~**4.2.    Seller Concession.** Seller, at Closing, shall credit, as directed by Buyer, an amount of $ _____ to assist~~
80  ~~with any or all of the following: Buyer's closing costs, loan discount points, loan origination fees, prepaid items (including any~~
81  ~~amounts that Seller agrees to pay because Buyer is not allowed to pay due to FHA, CHFA, VA, etc.), and any other fee, cost,~~
82  ~~charge, expense or expenditure related to Buyer's New Loan or other allowable Seller concession (collectively, Seller~~
83  ~~Concession). Seller Concession is in addition to any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract. Seller~~
84  ~~Concession will be reduced to the extent it exceeds the aggregate of what is allowed by Buyer's lender as set forth in the Closing~~
85  ~~Statement, Closing Disclosure or HUD-1, at Closing.~~
86  ~~**4.3.    Earnest Money.** The Earnest Money set forth in this section, in the form of _____, shall be~~
87  ~~payable to and held by _____ (Earnest Money Holder), in its trust account, on behalf~~
88  ~~of both Seller and Buyer. The Earnest Money deposit shall be tendered, by Buyer, with this Contract unless the parties mutually~~
89  ~~agree to an **Alternative Earnest Money Deadline** (§ 3) for its payment. The parties authorize delivery of the Earnest Money~~
90  ~~deposit to the company conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money~~
91  ~~Holder has agreed to have interest on Earnest Money deposits transferred to a fund established for the purpose of providing~~
92  ~~affordable housing to Colorado residents, Seller and Buyer acknowledge and agree that any interest accruing on the Earnest~~
93  ~~Money deposited with the Earnest Money Holder in this transaction shall be transferred to such fund.~~
94  ~~**4.3.1.    Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at the~~
95  ~~time of tender of this Contract is as set forth as the **Alternative Earnest Money Deadline** (§ 3).~~
96  ~~**4.3.2.    Return of Earnest Money.** If Buyer has a Right to Terminate and timely terminates, Buyer shall be~~
97  ~~entitled to the return of Earnest Money as provided in this Contract. If this Contract is terminated as set forth in § 25 and, except as~~
98  ~~provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate, Seller agrees to~~
99  ~~execute and return to Buyer or Broker working with Buyer, written mutual instructions, i.e., Earnest Money Release form, within~~
100 ~~three days of Seller's receipt of such form.~~
101     **4.4.    Form of Funds; Time of Payment; Funds Available.**
102         **4.4.1.    Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds, Cash at Closing
103 and closing costs, shall be in funds that comply with all applicable Colorado laws, including electronic transfer funds, certified
104 check, savings and loan teller's check and cashier's check (Good Funds).
105         **4.4.2.    Available Funds.** All funds required to be paid at Closing or as otherwise agreed in writing between the
106 parties shall be timely paid to allow disbursement by Closing Company at Closing **OR SUCH PARTY SHALL BE IN DEFAULT.**
107 Buyer represents that Buyer, as of the date of this Contract, ☐ Does ☐ Does Not have funds that are immediately verifiable and
108 available in an amount not less than the amount stated as Cash at Closing in § 4.1.
109     **4.5.    New Loan.**
110         **4.5.1.    Buyer to Pay Loan Costs.** Buyer, except as provided in § 4.4, if applicable, shall timely pay Buyer's loan
111 costs, loan discount points, prepaid items and loan origination fees, as required by lender.

112        **4.5.2.**   **Buyer May Select Financing.** Buyer may pay in cash or select financing appropriate and acceptable to
113 Buyer, including a different loan than initially sought, except as restricted in § 4.5.3 or § 30 (Additional Provisions).
114        **4.5.3.**   **Loan Limitations.** Buyer may purchase the Property using any of the following types of loans:
115 ☒ **Conventional**  ☒ **FHA**  ☐ **VA**  ☐ **Bond**  ☒ **Other** Loan from Cornerstone Mortgage Company     .
116        **4.5.4.**   **Good Faith Estimate – Monthly Payment and Loan Costs.** Buyer is advised to review the terms, conditions
117 and costs of Buyer's New Loan carefully. If Buyer is applying for a residential loan, the lender generally must provide Buyer with
118 a good faith estimate of Buyer's closing costs within three days after Buyer completes a loan application. Buyer should also obtain
119 an estimate of the amount of Buyer's monthly mortgage payment. If the New Loan is unsatisfactory to Buyer, Buyer has the Right
120 to Terminate under § 25.1, on or before **Loan Objection Deadline** (§ 3).
121 ~~**4.6.**~~  ~~**Assumption.** Buyer agrees to assume and pay an existing loan in the approximate amount of the Assumption~~
122 ~~Balance set forth in § 4.1, presently payable at $~~   ~~per~~   ~~including principal and interest~~
123 ~~presently at the rate of~~  ~~% per annum, and also including escrow for the following as indicated: ☐ **Real Estate Taxes**~~
124 ~~☐ **Property Insurance Premium** ☐ **Mortgage Insurance Premium** and~~   ~~.~~
125 ~~Buyer agrees to pay a loan transfer fee not to exceed $~~   ~~. At the time of assumption, the new interest rate shall~~
126 ~~not exceed~~  ~~% per annum and the new payment shall not exceed $~~  ~~per~~  ~~principal~~
127 ~~and interest, plus escrow, if any. If the actual principal balance of the existing loan at Closing is less than the Assumption Balance,~~
128 ~~which causes the amount of cash required from Buyer at Closing to be increased by more than $~~  ~~, then Buyer has~~
129 ~~the Right to Terminate under § 25.1, on or before **Closing Date** (§ 3), based on the reduced amount of the actual principal balance.~~
130 ~~Seller ☐ **Shall** ☐ **Shall Not** be released from liability on said loan. If applicable, compliance with the requirements for~~
131 ~~release from liability shall be evidenced by delivery ☐ on or before **Loan Transfer Approval Deadline** (§ 3) ☐ at **Closing** of~~
132 ~~an appropriate letter of commitment from lender. Any cost payable for release of liability shall be paid by~~   
133 ~~in an amount not to exceed $~~   ~~.~~
134 ~~**4.7.**~~  ~~**Seller or Private Financing.** Buyer agrees to execute a promissory note payable to~~   ~~,~~
135 ~~as ☐ **Joint Tenants** ☐ **Tenants In Common** ☐ **Other**~~   ~~, on the note form as indicated:~~
136 ~~☐ **(Default Rate)** NTD81-10-06 ☐ **Other**~~   ~~secured by a~~   
137 ~~(1st, 2nd, etc.) deed of trust encumbering the Property, using the form as indicated:~~
138 ~~☐ **Due on Transfer – Strict** (TD72-8-10) ☐ **Due on Transfer – Creditworthy** (TD73-8-10) ☐ **Assumable – Not Due on**~~
139 ~~**Transfer** (TD74-8-10) ☐ **Other**~~   ~~.~~
140 ~~The promissory note shall be amortized on the basis of~~  ~~☐ **Years** ☐ **Months**, payable at $~~   
141 ~~per~~  ~~including principal and interest at the rate of~~  ~~% per annum. Payments shall commence~~
142    ~~and shall be due on the~~  ~~day of each succeeding~~  ~~.~~
143 ~~If not sooner paid, the balance of principal and accrued interest shall be due and payable~~   
144 ~~after Closing. Payments ☐ **Shall** ☐ **Shall Not** be increased by~~  ~~of estimated annual real estate taxes, and ☐ **Shall**~~
145 ~~☐ **Shall Not** be increased by~~  ~~of estimated annual property insurance premium. The loan shall also contain the~~
146 ~~following terms: (1) if any payment is not received within~~  ~~days after its due date, a late charge of~~  ~~% of such~~
147 ~~payment shall be due; (2) interest on lender disbursements under the deed of trust shall be~~  ~~% per annum; (3) default~~
148 ~~interest rate shall be~~  ~~% per annum; (4) Buyer may prepay without a penalty except~~   ~~;~~
149 ~~and (5) Buyer ☐ **Shall** ☐ **Shall Not** execute and deliver, at Closing, a Security Agreement and UCC-1 Financing Statement~~
150 ~~granting the holder of the promissory note a~~  ~~(1st, 2nd, etc.) lien on the personal property included in this sale.~~
151 ~~Buyer ☐ **Shall** ☐ **Shall Not** provide a mortgagee's title insurance policy, at Buyer's expense.~~

152 ┌─────────────────────────────────────────┐
                      **TRANSACTION PROVISIONS**

153 **5.**   **FINANCING CONDITIONS AND OBLIGATIONS.**
154    **5.1.**   **Loan Closing. This sale is conditioned upon the closing of a new loan, secured by the Property. Buyer**
155 **represents to Seller that Buyer has submitted all of Buyer's financial information requested by the new lender, has**
156 **reviewed the loan documents and is willing to sign the loan documents related to that loan.** ~~**Loan Application.**~~ If Buyer is
157 to pay all or part of the Purchase Price by obtaining one or more loans (New Loan), or if an existing loan is not to be released
158 at Closing, Buyer, if required by such lender, shall make an application verifiable by such lender, on or before **Loan Application**
159 **Deadline** (§ 3) and exercise reasonable efforts to obtain such loan or approval.
160 ~~**5.2.**~~  ~~**Loan Objection.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is conditional~~
161 ~~upon Buyer determining, in Buyer's sole subjective discretion, whether the New Loan is satisfactory to Buyer, including its~~
162 ~~availability, payments, interest rate, terms, conditions, and cost of such New Loan. This condition is for the sole benefit of Buyer.~~
163 ~~Buyer has the Right to Terminate under § 25.1, on or before **Loan Objection Deadline** (§ 3), if the New Loan is not satisfactory to~~
164 ~~Buyer, in Buyer's sole subjective discretion. **IF SELLER DOES NOT TIMELY RECEIVE WRITTEN NOTICE TO**~~
165 ~~**TERMINATE, BUYER'S EARNEST MONEY SHALL BE NONREFUNDABLE**, except as otherwise provided in this~~
166 ~~Contract (e.g., Appraisal, Title, Survey).~~

167 ~~**5.3.** **Credit Information and Buyer's New Senior Loan.** If Buyer is to pay all or part of the Purchase Price by~~
168 ~~executing a promissory note in favor of Seller, or if an existing loan is not to be released at Closing, this Contract is conditional~~
169 ~~(for the sole benefit of Seller) upon Seller's approval of Buyer's financial ability and creditworthiness, which approval shall be at~~
170 ~~Seller's sole subjective discretion. In such case: (1) Buyer shall supply to Seller by **Buyer's Credit Information Deadline** (§ 3),~~
171 ~~at Buyer's expense, information and documents (including a current credit report) concerning Buyer's financial, employment and~~
172 ~~credit condition and Buyer's New Senior Loan, defined below, if any; (2) Buyer consents that Seller may verify Buyer's financial~~
173 ~~ability and creditworthiness; (3) any such information and documents received by Seller shall be held by Seller in confidence, and~~
174 ~~not released to others except to protect Seller's interest in this transaction; and (4) in the event Buyer is to execute a promissory~~
175 ~~note secured by a deed of trust in favor of Seller, this Contract is conditional (for the sole benefit of Seller) upon Seller's approval~~
176 ~~of the terms and conditions of any New Loan to be obtained by Buyer if the deed of trust to Seller is to be subordinate to Buyer's~~
177 ~~New Loan (Buyer's New Senior Loan). If the Cash at Closing is less than as set forth in § 4.1 of this Contract or Buyer's New~~
178 ~~Senior Loan changes from that approved by Seller, Seller has the Right to Terminate under § 25.1, at or before Closing. If Seller~~
179 ~~disapproves of Buyer's financial ability, creditworthiness or Buyer's New Senior Loan, in Seller's sole subjective discretion, Seller~~
180 ~~has the Right to Terminate under § 25.1, on or before **Disapproval of Buyer's Credit Information Deadline** (§ 3).~~
181 ~~**5.4.** **Existing Loan Review.** If an existing loan is not to be released at Closing, Seller shall deliver copies of the loan~~
182 ~~documents (including note, deed of trust, and any modifications) to Buyer by **Existing Loan Documents Deadline** (§ 3). For the~~
183 ~~sole benefit of Buyer, this Contract is conditional upon Buyer's review and approval of the provisions of such loan documents.~~
184 ~~Buyer has the Right to Terminate under § 25.1, on or before **Existing Loan Documents Objection Deadline** (§ 3), based on any~~
185 ~~unsatisfactory provision of such loan documents, in Buyer's sole subjective discretion. If the lender's approval of a transfer of the~~
186 ~~Property is required, this Contract is conditional upon Buyer's obtaining such approval without change in the terms of such loan,~~
187 ~~except as set forth in § 4.6. If lender's approval is not obtained by **Loan Transfer Approval Deadline** (§ 3), this Contract shall~~
188 ~~terminate on such deadline. Seller has the Right to Terminate under § 25.1, on or before Closing, in Seller's sole subjective~~
189 ~~discretion, if Seller is to be released from liability under such existing loan and Buyer does not obtain such compliance as set forth~~
190 ~~in § 4.6.~~

191 ~~**6.** **APPRAISAL PROVISIONS.**~~
192 ~~**6.1.** **Lender Property Requirements.** If the lender imposes any requirements or repairs (Requirements) to be made to~~
193 ~~the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, Seller has the Right to~~
194 ~~Terminate under § 25.1 (notwithstanding § 10 of this Contract), on or before three days following Seller's receipt of the~~
195 ~~Requirements, based on any unsatisfactory Requirements, in Seller's sole subjective discretion. Seller's Right to Terminate in this~~
196 ~~§ 6.1 shall not apply if, on or before any termination by Seller pursuant to this § 6.1: (1) the parties enter into a written agreement~~
197 ~~regarding the Requirements; or (2) the Requirements have been completed; or (3) the satisfaction of the Requirements is waived in~~
198 ~~writing by Buyer.~~
199 ~~**6.2.** **Appraisal Condition.** The applicable Appraisal provision set forth below shall apply to the respective loan type set~~
200 ~~forth in § 4.5.3, or if a cash transaction, i.e. no financing, § 6.2.1 shall apply.~~
201 ~~**6.2.1.** **Conventional/Other.** Buyer has the sole option and election to terminate this Contract if the Property's~~
202 ~~valuation, determined by an appraiser engaged on behalf of _____, is less than the Purchase~~
203 ~~Price. The appraisal shall be received by Buyer or Buyer's lender on or before **Appraisal Deadline** (§ 3). Buyer has the Right to~~
204 ~~Terminate under § 25.1, on or before **Appraisal Objection Deadline** (§ 3), if the Property's valuation is less than the Purchase~~
205 ~~Price and Seller's receipt of either a copy of such appraisal or written notice from lender that confirms the Property's valuation is~~
206 ~~less than the Purchase Price. This § 6.2.1 is for the sole benefit of Buyer.~~
207 ~~**6.2.2.** **FHA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser~~
208 ~~(Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of~~
209 ~~Earnest Money deposits or otherwise unless the Purchaser (Buyer) has been given in accordance with HUD/FHA or VA~~
210 ~~requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct~~
211 ~~Endorsement lender, setting forth the appraised value of the Property of not less than $ _____. The Purchaser (Buyer)~~
212 ~~shall have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the~~
213 ~~appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and~~
214 ~~Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Purchaser (Buyer) should~~
215 ~~satisfy himself/herself that the price and condition of the Property are acceptable.~~
216 ~~**6.2.3.** **VA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser (Buyer)~~
217 ~~shall not incur any penalty by forfeiture of Earnest Money or otherwise or be obligated to complete the purchase of the Property~~
218 ~~described herein, if the Contract Purchase Price cost exceeds the reasonable value of the Property established by the Department~~
219 ~~of Veterans Affairs. The Purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of~~
220 ~~this Contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.~~
221 ~~**6.3.** **Cost of Appraisal.** Cost of any appraisal to be obtained after the date of this Contract shall be timely paid by~~
222 ~~☐ **Buyer** ☐ **Seller.** The cost of the appraisal may include any or all fees paid to the appraiser, appraisal management company,~~
223 ~~lender's agent or all three.~~

224  **7.   EVIDENCE OF TITLE AND ASSOCIATION DOCUMENTS.**
225     **7.1.**  ☒  **Seller Selects Title Insurance Company.** If this box is checked, Seller shall select the title insurance company
226 to furnish the owner's title insurance policy at Seller's expense. On or before **Record Title Deadline** (§ 3), Seller shall furnish to
227 Buyer a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase Price, or if
228 this box is checked, ☐ an **Abstract** of title certified to a current date. Seller shall cause the title insurance policy to be issued and
229 delivered to Buyer as soon as practicable at or after Closing.
230     **7.2.**  ☐  **Buyer Selects Title Insurance Company.** If this box is checked, Buyer shall select the title insurance company
231 to furnish the owner's title insurance policy at Buyer's expense. On or before **Record Title Deadline** (§ 3), Buyer shall furnish to
232 Seller a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase Price.
233 If neither box in § 7.1 or § 7.2 is checked, § 7.1 applies.
234     **7.3.**    **Owner's Extended Coverage** (OEC). The Title Commitment ☐ **Shall** ☐ **Shall Not** commit to delete or insure
235 over the standard exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4)
236 unrecorded mechanics' liens, (5) gap period (effective date of commitment to date deed is recorded), and (6) unpaid taxes,
237 assessments and unredeemed tax sales prior to the year of Closing (OEC).
238  **Note:** The title insurance company may not agree to delete or insure over any or all of the standard exceptions.
239          **7.3.1.**    **Premium for OEC.** If the title insurance company agrees to provide an endorsement for OEC, any
240 additional premium expense to obtain an endorsement for OEC shall be paid by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer**
241 **and One-Half by Seller** ☐ **Other** _____.
242     **7.4.**    **Buyer's Right to Review Title Commitment and Title Documents. <u>Buyer has received all information and has</u>**
243 **<u>reviewed and accepts the title to the Property.</u>** ~~Buyer has the right to review the Title Commitment, its provisions and Title~~
244 ~~Documents (defined in § 7.5), and if not satisfactory to Buyer, Buyer may exercise Buyer's rights pursuant to § 8.1.~~
245     ~~**7.5.**~~   ~~**Copies of Exceptions.** Unless the box in § 7.2 is checked (Buyer Selects Title Insurance Company), on or before~~
246 ~~**Record Title Deadline** (§ 3), Seller, at Seller's expense, shall furnish to Buyer and~~ _____, ~~the following:~~
247 ~~(1) copies of any plats, declarations, covenants, conditions and restrictions burdening the Property, and (2) if a Title Commitment~~
248 ~~is required to be furnished, and if this box is checked~~ ☐ ~~**Copies of any Other Documents** (or, if illegible, summaries of such~~
249 ~~documents) listed in the schedule of exceptions (Exceptions). Even if the box is not checked, Seller has the obligation to furnish~~
250 ~~these documents pursuant to this section if requested by Buyer any time on or before **Exceptions Request Deadline** (§ 3). This~~
251 ~~requirement shall pertain only to documents as shown of record in the office of the clerk and recorder in the county where the~~
252 ~~Property is located. The Abstract or Title Commitment, together with any copies or summaries of such documents furnished~~
253 ~~pursuant to this section, constitute the title documents (collectively, Title Documents).~~
254     ~~**7.5.1.**~~   ~~**Existing Abstracts of Title.** Seller shall deliver to Buyer copies of any abstracts of title covering all or any~~
255 ~~portion of the Property (Abstract) in Seller's possession on or before **Record Title Deadline** (§ 3).~~
256     **7.6.**    **Homeowners' Association Documents.** Homeowners' Association Documents (Association Documents) consist of
257 the following:
258          **7.6.1.**    All Homeowners' Association declarations, bylaws, operating agreements, rules and regulations, party wall
259 agreements;
260          **7.6.2.**    Minutes of most recent annual owners' meeting;
261          **7.6.3.**    Minutes of any directors' or managers' meetings during the six-month period immediately preceding the
262 date of this Contract. If none of the preceding minutes exist, then the most recent minutes, if any (7.6.1, 7.6.2 and 7.6.3,
263 collectively, Governing Documents);
264          **7.6.4.**    The most recent financial documents which consist of: (1) annual and most recent balance sheet, (2) annual
265 and most recent income and expenditures statement, (3) annual budget, (4) reserve study, if any (Financial Documents).
266          **7.6.5.**    **Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A COMMON**
267 **INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR SUCH COMMUNITY. THE OWNER**
268 **OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF THE OWNER'S ASSOCIATION FOR THE**
269 **COMMUNITY AND WILL BE SUBJECT TO THE BYLAWS AND RULES AND REGULATIONS OF THE**
270 **ASSOCIATION. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL**
271 **OBLIGATIONS UPON THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY**
272 **ASSESSMENTS OF THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE**
273 **ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY THE DEBT. THE**
274 **DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE COMMUNITY MAY PROHIBIT THE**
275 **OWNER FROM MAKING CHANGES TO THE PROPERTY WITHOUT AN ARCHITECTURAL REVIEW BY THE**
276 **ASSOCIATION (OR A COMMITTEE OF THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION.**
277 **PURCHASERS OF PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE**
278 **FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY**
279 **READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND REGULATIONS OF**
280 **THE ASSOCIATION.**

281        **7.6.6.**    **Association Documents to Buyer.**

282 ☐       **7.6.6.1.**  **Seller to Provide Association Documents.** Seller shall cause the Association Documents to be
283 provided to Buyer, at Seller's expense, on or before **Association Documents Deadline** (§ 3).

284 ☒       **7.6.6.2.**  **Seller Authorizes Association.** Seller authorizes the Association to provide the Association
285 Documents to Buyer, at Seller's expense.

286       **7.6.6.3.**  **Seller's Obligation.** Seller's obligation to provide the Association Documents shall be fulfilled
287 upon Buyer's receipt of the Association Documents, regardless of who provides such documents.

288 **Note:** If neither box in this § 7.6.6 is checked, the provisions of § 7.6.6.1 shall apply.

289 ~~**7.6.7.** **Conditional on Buyer's Review.** Buyer has the right to review the Association Documents. Buyer has the~~
290 ~~Right to Terminate under § 25.1, on or before **Association Documents Objection Deadline** (§ 3), based on any unsatisfactory~~
291 ~~provision in any of the Association Documents, in Buyer's sole subjective discretion. Should Buyer receive the Association~~
292 ~~Documents after **Association Documents Deadline** (§ 3), Buyer, at Buyer's option, has the Right to Terminate under § 25.1 by~~
293 ~~Buyer's Notice to Terminate received by Seller on or before ten days after Buyer's receipt of the Association Documents. If Buyer~~
294 ~~does not receive the Association Documents, or if Buyer's Notice to Terminate would otherwise be required to be received by~~
295 ~~Seller after **Closing Date** (§ 3), Buyer's Notice to Terminate shall be received by Seller on or before **Closing** (§ 12.3). If Seller~~
296 ~~does not receive Buyer's Notice to Terminate within such time, Buyer accepts the provisions of the Association Documents as~~
297 ~~satisfactory, and Buyer waives any Right to Terminate under this provision, notwithstanding the provisions of § 8.5.~~

298 **8.**   **RECORD TITLE AND OFF-RECORD TITLE.**
299 ~~**8.1.**   **Record Title.** Buyer has the right to review and object to any of the Title Documents (Right to Object to Title,~~
300 ~~Resolution) as set forth in § 8.3. Buyer's objection may be based on any unsatisfactory form or content of Title Commitment,~~
301 ~~notwithstanding § 13, or any other unsatisfactory title condition, in Buyer's sole subjective discretion. If Buyer objects to any of~~
302 ~~the Title Documents, Buyer shall cause Seller to receive Buyer's Notice to Terminate or Notice of Title Objection on or before~~
303 ~~**Record Title Objection Deadline** (§ 3). If Title Documents are not received by Buyer, on or before the **Record Title Deadline**~~
304 ~~(§ 3), or if there is an endorsement to the Title Commitment that adds a new Exception to title, a copy of the new Exception to title~~
305 ~~and the modified Title Commitment shall be delivered to Buyer. Buyer shall cause Seller to receive Buyer's Notice to Terminate~~
306 ~~or Notice of Title Objection on or before ten days after receipt by Buyer of the following documents: (1) any required Title~~
307 ~~Document not timely received by Buyer, (2) any change to the Title Documents, or (3) endorsement to the Title Commitment. If~~
308 ~~Seller receives Buyer's Notice to Terminate or Notice of Title Objection, pursuant to this § 8.1 (Record Title), any title objection~~
309 ~~by Buyer and this Contract shall be governed by the provisions set forth in § 8.3 (Right to Object to Title, Resolution). If Seller~~
310 ~~does not receive Buyer's Notice to Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer~~
311 ~~accepts the condition of title as disclosed by the Title Documents as satisfactory.~~
312 ~~**8.2.**   **Off-Record Title.** Seller shall deliver to Buyer, on or before **Off-Record Title Deadline** (§ 3), true copies of all~~
313 ~~existing surveys in Seller's possession pertaining to the Property and shall disclose to Buyer all easements, liens (including,~~
314 ~~without limitation, governmental improvements approved, but not yet installed) or other title matters (including, without~~
315 ~~limitation, rights of first refusal and options) not shown by public records, of which Seller has actual knowledge (Off-Record~~
316 ~~Matters). Buyer has the right to inspect the Property to investigate if any third party has any right in the Property not shown by~~
317 ~~public records (such as an unrecorded easement, unrecorded lease, boundary line discrepancy or water rights). Buyer's Notice to~~
318 ~~Terminate or Notice of Title Objection of any unsatisfactory condition (whether disclosed by Seller or revealed by such inspection,~~
319 ~~notwithstanding § 13), in Buyer's sole subjective discretion, shall be received by Seller on or before **Off-Record Title Objection**~~
320 ~~**Deadline** (§ 3). If Seller receives Buyer's Notice to Terminate or Notice of Title Objection pursuant to this § 8.2 (Off-Record~~
321 ~~Title), any title objection by Buyer and this Contract shall be governed by the provisions set forth in § 8.3 (Right to Object to Title,~~
322 ~~Resolution). If Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection, on or before **Off-Record Title**~~
323 ~~**Objection Deadline** (§ 3), Buyer accepts title subject to such rights, if any, of third parties of which Buyer has actual knowledge.~~
324 ~~Unless disclosed in writing, Seller represents and warrants that there are no Off-Record Matters.~~
325 ~~**8.3.**   **Right to Object to Title, Resolution.** Buyer's Right to Object to Title includes, but is not limited to those matters~~
326 ~~set forth in §§ 8.1 (Record Title), 8.2 (Off-Record Title) and 13 (Transfer of Title), in Buyer's sole subjective discretion~~
327 ~~(collectively, Notice of Title Objection). If Buyer objects to any title matter, on or before the applicable deadline, Buyer has the~~
328 ~~option to either (1) object to the condition of title, or (2) terminate this Contract.~~
329 ~~**8.3.1.**   **Title Resolution.** If Seller receives Buyer's Notice of Title Objection, as provided in § 8.1 (Record Title) or~~
330 ~~§ 8.2 (Off-Record Title), on or before the applicable deadline, and if Buyer and Seller have not agreed to a written settlement~~
331 ~~thereof on or before **Title Resolution Deadline** (§ 3), this Contract shall terminate on the expiration of **Title Resolution Deadline**~~
332 ~~(§ 3), unless Seller receives Buyer's written withdrawal of Buyer's Notice of Title Objection (i.e., Buyer's written notice to waive~~
333 ~~objection to such items and waives the Right to Terminate for that reason), on or before expiration of **Title Resolution Deadline**~~
334 ~~(§ 3).~~
335 ~~**8.3.2.**   **Right to Terminate — Title Objection.** Buyer has the Right to Terminate under § 25.1, on or before the~~
336 ~~applicable deadline, based on any unsatisfactory title matter, in Buyer's sole subjective discretion.~~
337     **8.4.**   **Special Taxing Districts.** SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL OBLIGATION
338 INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX LEVIES ON THE TAXABLE

339     **PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH DISTRICTS MAY BE PLACED AT RISK**
340     **FOR INCREASED MILL LEVIES AND TAX TO SUPPORT THE SERVICING OF SUCH DEBT WHERE**
341     **CIRCUMSTANCES ARISE RESULTING IN THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH**
342     **INDEBTEDNESS WITHOUT SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE THE**
343     **SPECIAL TAXING DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY**
344     **TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND BY OBTAINING**
345     **FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND**
346     **RECORDER, OR THE COUNTY ASSESSOR.**

347    ~~Buyer has the Right to Terminate under § 25.1, on or before **Off-Record Title Objection Deadline** (§ 3), based on any~~
348 ~~unsatisfactory effect of the Property being located within a special taxing district, in Buyer's sole subjective discretion.~~

349     ~~**8.5.**   **Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property, or a right to~~
350 ~~approve this Contract, Seller shall promptly submit this Contract according to the terms and conditions of such right. If the holder~~
351 ~~of the right of first refusal exercises such right or the holder of a right to approve disapproves this Contract, this Contract shall~~
352 ~~terminate. If the right of first refusal is waived explicitly or expires, or the Contract is approved, this Contract shall remain in full~~
353 ~~force and effect. Seller shall promptly notify Buyer in writing of the foregoing. If expiration or waiver of the right of first refusal~~
354 ~~or Contract approval has not occurred on or before **Right of First Refusal Deadline** (§ 3), this Contract shall then terminate.~~

355     **8.6.**   **Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed
356 carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the Property,
357 including, without limitation, boundary lines and encroachments, area, zoning, unrecorded easements and claims of easements,
358 leases and other unrecorded agreements, and various laws and governmental regulations concerning land use, development and
359 environmental matters. **The surface estate may be owned separately from the underlying mineral estate, and transfer of the**
360 **surface estate does not necessarily include transfer of the mineral rights or water rights. Third parties may hold interests in**
361 **oil, gas, other minerals, geothermal energy or water on or under the Property, which interests may give them rights to**
362 **enter and use the Property.** Such matters may be excluded from or not covered by the title insurance policy. Buyer is advised to
363 timely consult legal counsel with respect to all such matters as there are strict time limits provided in this Contract [e.g., **Record**
364 **Title Objection Deadline** (§ 3) and **Off-Record Title Objection Deadline** (§ 3)].

365   **9.**   ~~**CURRENT SURVEY REVIEW.**~~
366     ~~**9.1.**   **Current Survey Conditions.** If the box in § 9.1.1 or § 9.1.2 is checked, Buyer, the issuer of the Title Commitment~~
367 ~~or the provider of the opinion of title if an Abstract, and _____ shall receive a Current Survey, i.e.,~~
368 ~~Improvement Location Certificate, Improvement Survey Plat or other form of survey set forth in § 9.1.2 (collectively, Current~~
369 ~~Survey), on or before **Current Survey Deadline** (§ 3). The Current Survey shall be certified by the surveyor to all those who are~~
370 ~~to receive the Current Survey.~~
371   ☐   ~~**9.1.1.**   **Improvement Location Certificate.** If the box in this § 9.1.1 is checked, ☐ **Seller** ☐ **Buyer** shall order~~
372 ~~or provide and pay, on or before Closing, the cost of an Improvement Location Certificate.~~
373     ~~**9.1.2.**   **Other Survey.** If the box in § 9.1.2 is checked, a Current Survey, other than an Improvement Location~~
374 ~~Certificate, shall be an ☐ **Improvement Survey Plat** ☐ _____. The parties agree that payment of the cost of~~
375 ~~the Current Survey and obligation to order or provide the Current Survey shall be as follows:~~
376
377
378     ~~**9.2.**   **Current Survey Objection.** Buyer has the right to review and object to the Current Survey. Buyer has the Right to~~
379 ~~Terminate under § 25.1, on or before the **Current Survey Objection Deadline** (§ 3), if the Current Survey is not timely received~~
380 ~~by Buyer or based on any unsatisfactory matter with the Current Survey, notwithstanding § 8.2 or § 13.~~

381                     **DISCLOSURE, INSPECTION AND DUE DILIGENCE**

382   **10.**   **PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY, DUE DILIGENCE, BUYER**
383   **DISCLOSURE AND SOURCE OF WATER.**
384     ~~**10.1.**   **Seller's Property Disclosure.** On or before **Seller's Property Disclosure Deadline** (§ 3), Seller agrees to deliver to~~
385 ~~Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property Disclosure form completed~~
386 ~~by Seller to Seller's actual knowledge, current as of the date of this Contract.~~
387     **10.2.**   **Inspection Objection.** Unless otherwise provided in this Contract, Buyer acknowledges that Seller is conveying the
388 Property to Buyer in an "as is" condition, "where is" and "with all faults". Seller shall disclose to Buyer, in writing, any latent
389 defects actually known by Seller. Buyer, acting in good faith, has the right to have inspections (by one or more third parties,
390 personally or both) of the Property and Inclusions (Inspection), at Buyer's expense. If (1) the physical condition of the Property,
391 including, but not limited to, the roof, walls, structural integrity of the Property, the electrical, plumbing, HVAC and other
392 mechanical systems of the Property, (2) the physical condition of the Inclusions, (3) service to the Property (including utilities and
393 communication services), systems and components of the Property, e.g. heating and plumbing, (4) any proposed or existing

transportation project, road, street or highway, or (5) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants is unsatisfactory, in Buyer's sole subjective discretion, Buyer shall, on or before **Inspection Objection Deadline (§ 3):**

  **10.2.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

  **10.2.2. Inspection Objection.** Deliver to Seller a written description of any unsatisfactory physical condition that Buyer requires Seller to correct.

  Buyer has the Right to Terminate under § 25.1, on or before **Inspection Objection Deadline (§ 3),** if the Property or Inclusions are unsatisfactory, in Buyer's sole subjective discretion.

  **10.3. Inspection Resolution.** If an Inspection Objection is received by Seller, on or before **Inspection Objection Deadline** (§ 3), and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Inspection Resolution Deadline** (§ 3), this Contract shall terminate on **Inspection Resolution Deadline** (§ 3), unless Seller receives Buyer's written withdrawal of the Inspection Objection before such termination, i.e., on or before expiration of **Inspection Resolution Deadline** (§ 3).

  **10.4. Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract or other written agreement between the parties, is responsible for payment for all inspections, tests, surveys, engineering reports, or other reports performed at Buyer's request (Work) and shall pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer shall not permit claims or liens of any kind against the Property for Work performed on the Property at Buyer's request. Buyer agrees to indemnify, protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce this section, including Seller's reasonable attorney fees, legal fees and expenses. The provisions of this section shall survive the termination of this Contract. This § 10.4 does not apply to items performed pursuant to an Inspection Resolution.

  **10.5. Insurability.** Buyer has the right to review and object to the availability, terms and conditions of and premium for property insurance (Property Insurance). Buyer has the Right to Terminate under § 25.1, on or before **Property Insurance Objection Deadline** (§ 3), based on any unsatisfactory provision of the Property Insurance, in Buyer's sole subjective discretion.

  **10.6. Due Diligence Documents.** Seller agrees to deliver copies of the following documents and information pertaining to the Property (Due Diligence Documents) to Buyer on or before **Due Diligence Documents Delivery Deadline** (§ 3):

  **10.6.1.** All current leases, including any amendments or other occupancy agreements, pertaining to the Property, if any (Leases).

  **10.6.2.** Other documents and information:



  **10.7. Due Diligence Documents Conditions.** Buyer has the right to review and object to Due Diligence Documents, in Buyer's sole subjective discretion, and has the right to object if Seller fails to deliver to Buyer all Due Diligence Documents. Buyer shall also have the unilateral right to waive any condition herein.

  **10.7.1. Due Diligence Documents Objection.** Buyer has the Right to Terminate under § 25.1, on or before **Due Diligence Documents Objection Deadline** (§ 3), based on any unsatisfactory matter with the Due Diligence Documents, in Buyer's sole subjective discretion. If all Due Diligence Documents under § 10.6 are not received by Buyer, on or before **Due Diligence Documents Delivery Deadline** (§ 3), then Buyer has the Right to Terminate under § 25.1 on or before the earlier of ten days after **Due Diligence Documents Objection Deadline** (§ 3) or Closing.

  ~~**10.8. Conditional Upon Sale of Property.** This Contract is conditional upon the sale and closing of that certain property owned by Buyer and commonly known as~~ _____ . ~~Buyer has the Right to Terminate under § 25.1 effective upon Seller's receipt of Buyer's Notice to Terminate on or before **Conditional Sale Deadline** (§ 3) if such property is not sold and closed by such deadline. This § 10.8 is for the sole benefit of Buyer. If Seller does not receive Buyer's Notice to Terminate on or before **Conditional Sale Deadline** (§ 3), Buyer waives any Right to Terminate under this provision.~~

  **10.9. Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer ☐ **Does** ☐ **Does Not** acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water Addendum disclosing the source of potable water for the Property. Buyer ☐ **Does** ☐ **Does Not** acknowledge receipt of a copy of the current well permit. ☐ There is **No Well**. **Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON NONRENEWABLE GROUND WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR INVESTIGATE THE DESCRIBED SOURCE) TO DETERMINE THE LONG-TERM SUFFICIENCY OF THE PROVIDER'S WATER SUPPLIES.**

  **10.10. Carbon Monoxide Alarms. Note:** If the improvements on the Property have a fuel-fired heater or appliance, a fireplace, or an attached garage and include one or more rooms lawfully used for sleeping purposes (Bedroom), the parties acknowledge that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code.

  **10.11. Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings for which a building permit was issued prior to January 1, 1978, this Contract shall be void unless (1) a completed Lead-Based Paint Disclosure (Sales) form is signed by Seller, the required real estate licensees and Buyer, and (2) Seller receives the

completed and fully executed form prior to the time when this Contract is signed by all parties. Buyer acknowledges timely receipt of a completed Lead-Based Paint Disclosure (Sales) form signed by Seller and the real estate licensees.

**10.12. Methamphetamine Disclosure.** If Seller knows that methamphetamine was ever manufactured, processed, cooked, disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure is required if the Property was remediated in accordance with state standards and other requirements are fulfilled pursuant to § 25-18.5-102, C.R.S. Buyer further acknowledges that Buyer has the right to engage a certified hygienist or industrial hygienist to test whether the Property has ever been used as a methamphetamine laboratory. Buyer has the Right to Terminate under § 25.1, upon Seller's receipt of Buyer's written Notice to Terminate, notwithstanding any other provision of this Contract, based on Buyer's test results that indicate the Property has been contaminated with methamphetamine, but has not been remediated to meet the standards established by rules of the State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S. Buyer shall promptly give written notice to Seller of the results of the test.

**11.   COLORADO FORECLOSURE PROTECTION ACT.** The Colorado Foreclosure Protection Act (Act) generally applies if: (1) the Property is residential, (2) Seller resides in the Property as Seller's principal residence, (3) Buyer's purpose in purchase of the Property is not to use the Property as Buyer's personal residence, and (4) the Property is in foreclosure or Buyer has notice that any loan secured by the Property is at least thirty days delinquent or in default. If the transaction is a Short Sale transaction and a Short Sale Addendum is part of this Contract, the Act does not apply. Each party is further advised to consult an attorney.

---

## CLOSING PROVISIONS

---

**12.   CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.**
    **12.1.   Closing Documents and Closing Information.** Seller and Buyer shall cooperate with the Closing Company to enable the Closing Company to prepare and deliver documents required for Closing to Buyer and Seller and their designees. If Buyer is obtaining a new loan to purchase the Property, Buyer acknowledges Buyer's lender shall be required to provide the Closing Company, in a timely manner, all required loan documents and financial information concerning Buyer's new loan. Buyer and Seller will furnish any additional information and documents required by Closing Company that will be necessary to complete this transaction. Buyer and Seller shall sign and complete all customary or reasonably required documents at or before Closing.
    **12.2.   Closing Instructions.** Colorado Real Estate Commission's Closing Instructions ☐ X **Are** executed with this Contract.
    **12.3.   Closing.** Delivery of deed from Seller to Buyer shall be at closing (Closing). Closing shall be on the date specified as the **Closing Date** (§ 3) or by mutual agreement at an earlier date. The hour and place of Closing shall be as designated by Seller.
    **12.4.   Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality, and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

**13.   TRANSFER OF TITLE.** Subject to tender of payment at Closing as required herein and compliance by Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient special or general warranty deed to Buyer, at Closing, conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except as provided herein, title shall be conveyed free and clear of all liens, including any governmental liens for special improvements installed as of the date of Buyer's signature hereon, whether assessed or not. Title shall be conveyed subject to:
    **13.1.** Those specific Exceptions described by reference to recorded documents as reflected in the Title Documents accepted by Buyer in accordance with **Record Title** (§ 8.1),
    **13.2.** Distribution utility easements (including cable TV),
    **13.3.** Those specifically described rights of third parties not shown by the public records of which Buyer has actual knowledge and which were accepted by Buyer in accordance with **Off-Record Title** (§ 8.2) and **Current Survey Review** (§ 9),
    **13.4.** Inclusion of the Property within any special taxing district, and
    **13.5.** Other n/a_____.

**14.   PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid shall be paid at or before Closing from the proceeds of this transaction or from any other source.

**15.   CLOSING COSTS, CLOSING FEE, ASSOCIATION FEES AND TAXES.**
    **15.1.   Closing Costs.** Buyer and Seller shall pay, in Good Funds, their respective closing costs and all other items required to be paid at Closing, except as otherwise provided herein.
    **15.2.   Closing Services Fee.** The fee for real estate closing services shall be paid at Closing by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **Other** _____.
    **15.3.   Status Letter and Record Change Fees.** Any fees incident to the issuance of Association's statement of assessments (Status Letter) shall be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.

505 Any record change fee assessed by the Association including, but not limited to, ownership record transfer fees regardless of name
506 or title of such fee (Association's Record Change Fee) shall be paid by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-**
507 **Half by Seller** ☐ **None**. See § 15.5 for Private Transfer Fees.

508     **15.4.**   **Local Transfer Tax.** ☐ **The Local Transfer Tax** of _____ % of the Purchase Price shall be paid at Closing by
509 ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.

510     **15.5.**   **Private Transfer Fee.** Private transfer fees and other fees due to a transfer of the Property, payable at Closing, such
511 as community association fees, developer fees and foundation fees, shall be paid at Closing by ☐ **Buyer** ☒ **Seller** ☐ **One-Half**
512 **by Buyer and One-Half by Seller** ☐ **None**. The Private Transfer Fee, whether one or more, is for the following association(s):
513 _____ in the total amount of _____% of the Purchase Price or $_____.

514     **15.6.**   **Water Transfer Fees.** The Water Transfer Fees can change. The fees, as of the date of this Contract, do not exceed:
515 $_____ for ☒ Water Stock/Certificates ☒ Water District
516 $_____ for ☐ Augmentation Membership ☐ Small Domestic Water Company ☐ _____
517 and shall be paid at Closing by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.

518     **15.7.**   **Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction shall be paid when due by
519 ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **None**.

520 **16.**   **PRORATIONS.** The following shall be prorated to **Closing Date** (§ 3), except as otherwise provided:

521     **16.1.**   **Taxes.** Personal property taxes, if any, special taxing district assessments, if any, and general real estate taxes for the
522 year of Closing, based on ☒ **Taxes for the Calendar Year Immediately Preceding Closing** ☐ **Most Recent Mill Levy and**
523 **Most Recent Assessed Valuation**, adjusted by any applicable qualifying seniors property tax exemption, qualifying disabled
524 veteran exemption or ☐ **Other** _____.

525 ~~**16.2.** **Rents.** Rents based on ☐ **Rents Actually Received** ☐ **Accrued**. At Closing, Seller shall transfer or credit to~~
526 ~~Buyer the security deposits for all Leases assigned, or any remainder after lawful deductions, and notify all tenants in writing of~~
527 ~~such transfer and of the transferee's name and address. Seller shall assign to Buyer all Leases in effect at Closing and Buyer shall~~
528 ~~assume Seller's obligations under such Leases.~~

529     **16.3.**   **Association Assessments.** Current regular Association assessments and dues (Association Assessments) paid in
530 advance shall be credited to Seller at Closing. Cash reserves held out of the regular Association Assessments for deferred
531 maintenance by the Association shall not be credited to Seller except as may be otherwise provided by the Governing Documents.
532 Buyer acknowledges that Buyer may be obligated to pay the Association, at Closing, an amount for reserves or working capital.
533 Any special assessment assessed prior to **Closing Date** (§ 3) by the Association shall be the obligation of ☐ **Buyer** ☒ **Seller**.
534 Except however, any special assessment by the Association for improvements that have been installed as of the date of Buyer's
535 signature hereon, whether assessed prior to or after Closing, shall be the obligation of Seller. Seller represents that the Association
536 Assessments are currently payable at $ _____ per _____ and that there are no unpaid regular or special
537 assessments against the Property except the current regular assessments and _____. Such
538 assessments are subject to change as provided in the Governing Documents. Seller agrees to promptly request the Association to
539 deliver to Buyer before **Closing Date** (§ 3) a current Status Letter.

540     **16.4.**   **Other Prorations.** Water and sewer charges, propane, interest on continuing loan, and n/a_____.

541     **16.5.**   **Final Settlement.** Unless otherwise agreed in writing, these prorations shall be final.

542 **17.**   **POSSESSION.** Possession of the Property shall be delivered to Buyer on **Possession Date** (§ 3) at **Possession Time** (§ 3),
543 subject to the following Leases or tenancies:
544 none
545

546     If Seller, after Closing, fails to deliver possession as specified, Seller shall be subject to eviction and shall be additionally
547 liable to Buyer for payment of $ _____ per day (or any part of a day notwithstanding § 18.1) from **Possession Date**
548 (§ 3) and **Possession Time** (§ 3) until possession is delivered.

549     Buyer ☐ **Does** ☒ **Does Not** represent that Buyer will occupy the Property as Buyer's principal residence.
550 **Note:** If the parties agree to execute a Post-Closing Occupancy Agreement, the document should appear in **Attachments** (§ 31).

---

551 **GENERAL PROVISIONS**

---

552 **18.**   **DAY; COMPUTATION OF PERIOD OF DAYS, DEADLINE.**

553     **18.1.**   **Day.** As used in this Contract, the term "day" shall mean the entire day ending at 11:59 p.m., United States
554 Mountain Time (Standard or Daylight Savings as applicable).

555     **18.2.**   **Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified,
556 the first day is excluded and the last day is included, e.g., three days after MEC. If any deadline falls on a Saturday, Sunday or
557 federal or Colorado state holiday (Holiday), such deadline ☐ **Shall** ☒ **Shall Not** be extended to the next day that is not a
558 Saturday, Sunday or Holiday. Should neither box be checked, the deadline shall not be extended.

559 ~~19.   CAUSES OF LOSS, INSURANCE; DAMAGE TO INCLUSIONS AND SERVICES; CONDEMNATION; AND~~
560 ~~WALK-THROUGH. Except as otherwise provided in this Contract, the Property, Inclusions or both shall be delivered in the~~
561 ~~condition existing as of the date of this Contract, ordinary wear and tear excepted.~~

562 ~~19.1.   Causes of Loss, Insurance. In the event the Property or Inclusions are damaged by fire, other perils or causes of~~
563 ~~loss prior to Closing in an amount of not more than ten percent of the total Purchase Price (Property Damage), Seller shall be~~
564 ~~obligated to repair the same before **Closing Date** (§ 3). Buyer has the Right to Terminate under § 25.1, on or before **Closing Date**~~
565 ~~(§ 3), if the Property Damage is not repaired before **Closing Date** (§ 3) or if the damage exceeds such sum. Should Buyer elect to~~
566 ~~carry out this Contract despite such Property Damage, Buyer shall be entitled to a credit at Closing for all insurance proceeds that~~
567 ~~were received by Seller (but not the Association, if any) resulting from such damage to the Property and Inclusions, plus the~~
568 ~~amount of any deductible provided for in such insurance policy. Such credit shall not exceed the Purchase Price. In the event Seller~~
569 ~~has not received such insurance proceeds prior to Closing, the parties may agree to extend the **Closing Date** (§ 3) or, at the option~~
570 ~~of Buyer, Seller shall assign such proceeds at Closing, plus credit Buyer the amount of any deductible provided for in such~~
571 ~~insurance policy, but not to exceed the total Purchase Price.~~

572 ~~19.2.   Damage, Inclusions and Services. Should any Inclusion or service (including utilities and communication~~
573 ~~services), system, component or fixture of the Property (collectively Service), e.g., heating or plumbing, fail or be damaged~~
574 ~~between the date of this Contract and Closing or possession, whichever shall be earlier, then Seller shall be liable for the repair or~~
575 ~~replacement of such Inclusion or Service with a unit of similar size, age and quality, or an equivalent credit, but only to the extent~~
576 ~~that the maintenance or replacement of such Inclusion or Service is not the responsibility of the Association, if any, less any~~
577 ~~insurance proceeds received by Buyer covering such repair or replacement. If the failed or damaged Inclusion or Service is not~~
578 ~~repaired or replaced on or before Closing or possession, whichever shall be earlier, Buyer has the Right to Terminate under § 25.1,~~
579 ~~on or before **Closing Date** (§ 3), or at the option of Buyer, Buyer will be entitled to a credit at Closing for the repair or~~
580 ~~replacement of such Inclusion or Service. Such credit shall not exceed the Purchase Price. If Buyer receives such a credit, Seller's~~
581 ~~right for any claim against the Association, if any, shall survive Closing. Seller and Buyer are aware of the existence of pre-owned~~
582 ~~home warranty programs that may be purchased and may cover the repair or replacement of such Inclusions.~~

583 ~~19.3.   Condemnation. In the event Seller receives actual notice prior to Closing that a pending condemnation action may~~
584 ~~result in a taking of all or part of the Property or Inclusions, Seller shall promptly notify Buyer, in writing, of such condemnation~~
585 ~~action. Buyer has the Right to Terminate under § 25.1, on or before **Closing Date** (§ 3), based on such condemnation action, in~~
586 ~~Buyer's sole subjective discretion. Should Buyer elect to consummate this Contract despite such diminution of value to the~~
587 ~~Property and Inclusions, Buyer shall be entitled to a credit at Closing for all condemnation proceeds awarded to Seller for the~~
588 ~~diminution in the value of the Property or Inclusions but such credit shall not include relocation benefits or expenses, or exceed the~~
589 ~~Purchase Price.~~

590 ~~19.4.   Walk-Through and Verification of Condition. Buyer, upon reasonable notice, has the right to walk through the~~
591 ~~Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with this Contract.~~

592 **20.   RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this Contract, Buyer and Seller acknowledge
593 that the respective broker has advised that this Contract has important legal consequences and has recommended the examination
594 of title and consultation with legal and tax or other counsel before signing this Contract.

595 **21.   TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence hereof. If any note or check received as
596 Earnest Money hereunder or any other payment due hereunder is not paid, honored or tendered when due, or if any obligation
597 hereunder is not performed or waived as herein provided, the non-defaulting party has the following remedies:

598 **21.1.   If Buyer is in Default:**
599 ☐      **21.1.1.   Specific Performance.** Seller may elect to treat this Contract as canceled, in which case all Earnest Money
600 (whether or not paid by Buyer) shall be paid to Seller and retained by Seller; and Seller may recover such damages as may be
601 proper; or Seller may elect to treat this Contract as being in full force and effect and Seller has the right to specific performance or
602 damages, or both.

603 **21.1.2.   Liquidated Damages, Applicable. This § 21.1.2 shall apply <u>unless the box in § 21.1.1 is checked</u>.** All
604 Earnest Money (whether or not paid by Buyer) shall be paid to Seller, and retained by Seller. Both parties shall thereafter be
605 released from all obligations hereunder. It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES, and
606 not a penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4, 22, 23 and 24), said
607 payment of Earnest Money shall be SELLER'S ONLY REMEDY for Buyer's failure to perform the obligations of this Contract.
608 Seller expressly waives the remedies of specific performance and additional damages.

609 **21.2.   If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received
610 hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this Contract as
611 being in full force and effect and Buyer has the right to specific performance or damages, or both.

612 **22.  LEGAL FEES, COST AND EXPENSES.**  Anything to the contrary herein notwithstanding, in the event of any arbitration
613 or litigation relating to this Contract, prior to or after **Closing** date (§ 3), the arbitrator or court shall award to the prevailing party
614 all reasonable costs and expenses, including attorney fees, legal fees and expenses.

615 **23.  MEDIATION.**  If a dispute arises relating to this Contract, prior to or after Closing, and is not resolved, the parties shall first
616 proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person
617 who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the
618 dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will
619 share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute
620 is not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the other at the party's
621 last known address. This section shall not alter any date in this Contract, unless otherwise agreed.

622 ~~**24.  EARNEST MONEY DISPUTE.**  Except as otherwise provided herein, Earnest Money Holder shall release the Earnest~~
623 ~~Money as directed by written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding the~~
624 ~~Earnest Money (notwithstanding any termination of this Contract), Earnest Money Holder shall not be required to take any action.~~
625 ~~Earnest Money Holder, at its sole subjective discretion, has several options: (1) await any proceeding, (2) interplead all parties and~~
626 ~~deposit Earnest Money into a court of competent jurisdiction and shall recover court costs and reasonable attorney and legal fees,~~
627 ~~or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or~~
628 ~~Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Earnest~~
629 ~~Money Holder's notice to the parties, Earnest Money Holder shall be authorized to return the Earnest Money to Buyer. In the event~~
630 ~~Earnest Money Holder does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Earnest~~
631 ~~Money Holder shall disburse the Earnest Money pursuant to the Order of the Court. The parties reaffirm the obligation of~~
632 ~~**Mediation (§ 23).**~~

633 **25.  TERMINATION.**
634     **25.1.  Right to Terminate.**  If a party has a right to terminate, as provided in this Contract (Right to Terminate), the
635 termination shall be effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such
636 written notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not
637 received on or before the specified deadline, the party with the Right to Terminate shall have accepted the specified matter,
638 document or condition as satisfactory and waived the Right to Terminate under such provision.
639     **25.2.  Effect of Termination.**  In the event this Contract is terminated, all Earnest Money received hereunder shall be
640 returned and the parties shall be relieved of all obligations hereunder, subject to §§ 10.4, 22, 23 and 24.

641 **26.  ENTIRE AGREEMENT, MODIFICATION, SURVIVAL.**  This Contract, its exhibits and specified addenda, constitute
642 the entire agreement between the parties relating to the subject hereof, and any prior agreements pertaining thereto, whether oral or
643 written, have been merged and integrated into this Contract. No subsequent modification of any of the terms of this Contract shall
644 be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any right or obligation in this
645 Contract that, by its terms, exists or is intended to be performed after termination or Closing shall survive the same.

646 **27.  NOTICE, DELIVERY, AND CHOICE OF LAW.**
647     **27.1.  Physical Delivery.**  All notices must be in writing, except as provided in § 27.2. Any document, including a signed
648 document or notice, from or on behalf of Seller, and delivered to Buyer shall be effective when physically received by Buyer, any
649 signatory on behalf of Buyer, any named individual of Buyer, any representative of Buyer, or Brokerage Firm of Broker working
650 with Buyer (except for delivery, after Closing, of the notice requesting mediation described in § 23) and except as provided in
651 § 27.2. Any document, including a signed document or notice, from or on behalf of Buyer, and delivered to Seller shall be
652 effective when physically received by Seller, any signatory on behalf of Seller, any named individual of Seller, any representative
653 of Seller, or Brokerage Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting mediation
654 described in § 23) and except as provided in § 27.2.
655     **27.2.  Electronic Delivery.**  As an alternative to physical delivery, any document, including any signed document or
656 written notice, may be delivered in electronic form only by the following indicated methods: ☒ **Facsimile** ☒ **Email** ☒ **Internet**
657 ☐ **No Electronic Delivery**. If the box "No Electronic Delivery" is checked, this § 27.2 shall not be applicable and § 27.1 shall
658 govern notice and delivery. Documents with original signatures shall be provided upon request of any party.
659     **27.3.  Choice of Law.**  This Contract and all disputes arising hereunder shall be governed by and construed in accordance
660 with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for property
661 located in Colorado.

662 **28.  NOTICE OF ACCEPTANCE, COUNTERPARTS.**  This proposal shall expire unless accepted in writing, by Buyer and
663 Seller, as evidenced by their signatures below, and the offering party receives notice of such acceptance pursuant to § 27 on or
664 before **Acceptance Deadline Date** (§ 3) and **Acceptance Deadline Time** (§ 3). If accepted, this document shall become a contract

665  between Seller and Buyer. A copy of this Contract may be executed by each party, separately, and when each party has executed a
666  copy thereof, such copies taken together shall be deemed to be a full and complete contract between the parties.

667  **29.   GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not
668  limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations** (§ 5),
669  **Record Title** and **Off-Record Title** (§ 8), **Current Survey Review** (§ 9) and **Property Disclosure, Inspection, Indemnity,**
670  **Insurability, Due Diligence, Buyer Disclosure and Source of Water** (§ 10).

671  ┌──────────────────────────────────────────────┐
     │     **ADDITIONAL PROVISIONS AND ATTACHMENTS**     │
     └──────────────────────────────────────────────┘

672  **30.   ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
673  Commission.) Keith is a debtor and debtor in possession in a Chapter 11 bankruptcy case pending in the Bankruptcy Court for the
674  District of Colorado, Case Number 12-16506. This agreement and the rights and obligations that arise therefrom are subject to the
675  approval of the Bankruptcy Court.

676  **ATTACHMENTS.**
677  **31.1.**   The following attachments **are a part** of this Contract:
678  none
679
680  **31.2.**   The following disclosure forms **are attached** but are **not** a part of this Contract:
681  none
682

683  ┌──────────────────────────────────┐
     │            **SIGNATURES**            │
     └──────────────────────────────────┘

684

Buyer's Name:    R.Danette Stewart Revocable Living Trust
                 ─────────────────────────────────────────


R. Danette Stewar, Trustee  1/18/2013
─────────────────────────────────────────
Buyer's Signature                    Date
Address:         100 Eagles Nest Trail
                 Norfork, AR 72658
Phone No.:       870-499-7766
Fax No.:         _____
Electronic Address: _____

685  **[NOTE:  If this offer is being countered or rejected, do not sign this document. Refer to § 32]**


Seller's Name:   Richard V Keith
                 ─────────────────────────────────────────


─────────────────────────────────────────
Seller's Signature                   Date
Address:         3213 Shore Road
                 Fort Collins, CO 80524
Phone No.:       970 215 7399
Fax No.:         _____
Electronic Address: _____

686  **32.   COUNTER; REJECTION.** This offer is  ☐ **Countered**  ☐ **Rejected.**
687  **Initials only of party (Buyer or Seller) who countered or rejected offer** _____

688  ┌──────────────────────────────────────────────────┐
     │   **END OF CONTRACT TO BUY AND SELL REAL ESTATE**   │
     └──────────────────────────────────────────────────┘

copy thereof, such copies taken together shall be deemed to be a full and complete contract between the parties.

**667**  **29.  GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not
**668**  limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations (§ 5),**
**669**  **Record Title and Off-Record Title (§ 8), Current Survey Review (§ 9)** and **Property Disclosure, Inspection, Indemnity,**
**670**  **Insurability, Due Diligence, Buyer Disclosure and Source of Water (§ 10).**

**671**

**ADDITIONAL PROVISIONS AND ATTACHMENTS**

**672**  **30.  ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate
**673**  Commission.) Keith is a debtor and debtor in possession in a Chapter 11 bankruptcy case pending in the Bankruptcy Court for the
**674**  District of Colorado, Case Number 12-16506. This agreement and the rights and obligations that arise therefrom are subject to the
**675**  approval of the Bankruptcy Court.

**676**  **ATTACHMENTS.**
**677**      **31.1.**  The following attachments **are a part** of this Contract:
**678**  none
**679**
**680**      **31.2.**  The following disclosure forms **are attached but are not a part** of this Contract:
**681**  none
**682**

**683**

**SIGNATURES**

**684**

Buyer's Name:   R.Danette Stewart Revocable Living Trust

*R. Danett. Stewart Danette 1/16/13*

Buyer's Signature                                Date
Address:          100 Eagles Nest Trail
                       Norfork, AR 72658
Phone No.:      870-499-7766
Fax No.:
Electronic Address:

**685**  **[NOTE:  If this offer is being countered or rejected, do not sign this document. Refer to § 32]**

Seller's Name:   Keith Richard V

Seller's Signature                                Date
Address:          3213 Shore Road
                       Fort Collins, CO 80524
Phone No.:      970 215 7399
Fax No.:
Electronic Address:

**686**  **32.  COUNTER; REJECTION.** This offer is ☐ **Countered** ☐ **Rejected.**
**687**  **Initials only of party (Buyer or Seller) who countered or rejected offer** _____

**688**

**END OF CONTRACT TO BUY AND SELL REAL ESTATE**

No. CBS1-9-12.  CONTRACT TO BUY AND SELL REAL ESTATE (RESIDENTIAL)                    Page 14 of 15